TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
ANIL J. ANTONY (Cal. Bar No. 258839)
Assistant United States Attorney
Deputy Chief, Cyber & Intellectual Property Crimes Section
DEVON A. MYERS (Cal. Bar No. 240031)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6579/0649
    Facsimile: (213) 894-2927
    E-mail:   anil.j.antony@usdoj.gov
              devon.myers@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>TITYAYE MARINA MANSBANGURA,<br>  aka "Tityaye Igbokwe,"<br>  aka "Marina Mansour,"<br>  aka "Marina Mansaray,"<br>  aka "Marina Tityaye Mans<br>    Bangura,"<br><br>    Defendant. | No. 2:19-CR-00380-VAP-7<br><br>GOVERNMENT'S POSITION REGARDING SENTENCING OF DEFENDANT TITYAYE MARINA MANSBANGURA (7); DECLARATION OF ANIL J. ANTONY AND EXHIBITS (VICTIM IMPACT STATEMENTS)<br><br>Hearing Date: May 17, 2021<br>Hearing Time: 9:00 A.M.<br>Location: Courtroom of the Hon. Virginia A. Phillips |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Anil J. Antony and Devon A. Myers, hereby files its Position Regarding Sentencing of defendant Tityaye Marina Mansbangura (7) ("Sentencing Position").

This Sentencing Position is based upon the attached memorandum of points and authorities, the declaration of Anil J. Antony and exhibits lodged concurrently under seal, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 26, 2021

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division

　　/s/
ANIL J. ANTONY
DEVON A. MYERS
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On January 26, 2021, defendant Tityaye Marina Mansbangura ("defendant"), pleaded guilty to Count One of the Indictment, which charged her with conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h).  Defendant participated in fraud schemes targeting at least ten victims, including by opening bank accounts and money service accounts for co-defendant Valentine Iro (1) ("co-defendant Iro") and co-defendant Chukwudi Christogunus Igbokwe (2) ("co-defendant Igbokwe") to receive funds fraudulently obtained from the victims.  (Dkt. 802 ("Plea Agreement") ¶ 11.) These schemes intended to defraud the victims of more than $150,000. As a result, one victim was so devasted that she has contemplated suicide.  Defendant used multiple identities and two unindicted coconspirators -- described as UICC 1 and UICC 2 in the Indictment -- to open these accounts.

The parties agreed to several sentencing factors, including that: the base offense level was 7; the intended value of the funds to be laundered was more than $150,000 (+10); defendant was involved in schemes that sought to defraud at least ten victims, and that at least one of the victims suffered substantial financial hardship (+2); the fraud scheme occurred outside the United States and used sophisticated means (+2); defendant was convicted under 18 U.S.C. § 1956 (+2); and the offense involved sophisticated laundering (+2). (Plea Agreement ¶ 13.)

On April 12, 2021, the United States Probation and Pretrial Services Office ("USPPO") disclosed its Presentence Investigation Report (Dkt. 854, the "PSR"), in which it agreed with the parties'

Sentencing Guidelines calculations and determined defendant's total offense level as 22. The USPPO calculated defendant's criminal history category as I, and recommended a sentence of 41 months' imprisonment. (Dkt. 853.)

The government agrees with the PSR's calculations of defendant's offense level and criminal history category. Based on consideration of the sentencing factors, the government recommends a low-end sentence of 41 months' imprisonment, to be followed by a three-year term of supervised release, and a $100 special assessment.

**II. RELEVANT FACTS**

    **A.    Charges**

On May 31, 2019, the Honorable Jean P. Rosenbluth, United States Magistrate Judge, signed a criminal Complaint (Dkt. 1), charging 26 individuals, including defendant, with violation of 18 U.S.C. §§ 1956(h) (Conspiracy to Engage in Money Laundering) and 1349 (Conspiracy to Commit Wire Fraud, Mail Fraud, and Bank Fraud).

On June 27, 2019, a grand jury returned a 252-count Indictment (Dkt. 30), charging 80 defendants with violations of a number of statutes. The charges against defendant include violations of 18 U.S.C. §§ 1956(h) (Conspiracy to Engage in Money Laundering); 1349 (Conspiracy to Commit Wire Fraud, Mail Fraud, and Bank Fraud); and 1028A(a)(1) (Aggravated Identity Theft), among others.

    **B.    Operation of the Overarching Conspiracy**

The Complaint and Indictment both describe the general operation of the fraud schemes (see, e.g., Complaint ¶¶ 4.a-4.d), so they are only briefly summarized here. However, in general, the conspiracy operated as follows:

Defendants Iro and Igbokwe would communicate with fraudsters, or middle-men for the fraudsters, who sought bank accounts into which they could fraudulently induce victims to deposit funds. (See id. ¶ 5.) Defendants Iro and Igbokwe were, essentially, a clearinghouse for fraudulent bank accounts. They would collect bank account information (some from Los Angeles and some from coconspirators in other cities or countries), field requests for bank account information from coconspirators all over the world, and then send out bank account information to multiple coconspirators. (See id. ¶ 7.) It was not uncommon for defendants Iro and Igbokwe to send out the same bank account information to five or more different coconspirators for use in their respective fraudulent schemes. (See id.)

These fraudulent schemes included business email compromise ("BEC") schemes and romance scams. BECs often involve a computer hacker gaining unauthorized access to a business email account, blocking or redirecting communications to and/or from the email account, and then using the compromised email account or a separate fraudulent email account to communicate with personnel from a victim company and attempt to trick them into making an unauthorized wire transfer. Romance scams generally take advantage of persons looking for romantic partners by targeting victims on dating websites and other social media platforms. The scammers create fake profiles, cultivate relationships with prospective victims, and lure them to give the scammers money and/or to unwittingly assist in laundering fraudulently-obtained funds.

For romance scams and schemes targeting the elderly, defendants Iro and Igbokwe would sometimes use a bank account or money service

account that they controlled personally or an account opened in the name of a relative.[1]  (See id. ¶ 8.)  For BEC schemes, escrow fraud, and other business fraud schemes, defendants Iro and Igbokwe would attempt to locate an appropriate bank account -- often a business bank account -- into which victim funds could be deposited.  (See id. ¶ 11.)  If they themselves did not have access to a bank account that could be used for the fraud and/or laundering, defendants Iro and Igbokwe would ask coconspirators for a bank account that could be used.[2]  (See id.)

If a bank account with a specific name was required, defendants Iro and Igbokwe would at times coordinate with money mules, or individuals who directed money mules, to open accounts that could receive fraudulently-obtained funds.  (See id. ¶ 12.)  The coconspirators would attempt to make the business name mirror the name of the company with which a victim company was corresponding about a business transaction.  (See id.)  This often included the filing of a fictitious business name statement with the Los Angeles County Registrar/Recorder's Office, which could then be provided to the bank.  (See id.)

---

[1] As discussed in the Complaint, romance scam and elder fraud victims frequently do not learn that they are being victimized, or are unlikely to report the fraud, so there is less risk for fraudsters and money launderers.  (See id. ¶ 8.)  In contrast, victims of BEC frauds and other business-related frauds often quickly discover that they have been scammed, creating greater risks of detection for the perpetrators and money launderers.  (See id. ¶ 9.)

[2] Defendants Iro and Igbokwe were typically careful when doing U.S.-to-U.S. wire transfers in BEC schemes or other business fraud schemes for fear of law enforcement scrutiny and they warned other coconspirators of the danger that such "local," i.e., U.S.-to-U.S., wires would draw scrutiny by law enforcement, and specifically by the FBI.

Once a victim deposited funds into a fraudulent bank account or a money service account, defendants Iro and Igbokwe would coordinate with coconspirators to withdraw or move the funds, and then to further launder the funds. (See id. ¶ 14.) This sometimes involved sending the funds to other bank accounts used or controlled by coconspirators through wires, or withdrawing funds through cashier's checks, checks, or as cash. (See id.)

Once funds were withdrawn as cash, defendants Iro and Igbokwe frequently used illicit money exchangers who would assist in transferring money overseas, generally without directly transferring those funds internationally. (See id. ¶ 17.) They sent millions of dollars to Nigeria in this way. The defendants would sometimes launder funds by the purchase of property -- such as cars and trucks -- which they would then ship to Nigeria. (See id. ¶ 19.) At other times, they would attempt to disguise the fraudulently obtained funds as payments for vehicles. (See id.)

**C. Defendant's Acts and Role in the Conspiracy**

Starting no later than April 22, 2016 through at least August 22, 2019, defendant conspired with co-defendant Iro and co-defendant Igbokwe. (Plea Agreement ¶ 11.) Defendant primarily obtained accounts for co-defendant Iro and co-defendant Igbokwe to be used in romance scams, but also participated in BEC fraud schemes. (PSR ¶¶ 33-92.) Defendant provided co-defendant Iro and co-defendant Igbokwe bank and money service accounts in her names and the names of UICC 1 and UICC 2, who were relatives of defendant. Some of those accounts were opened in the names of fictitious business entities.

As part of the conspiracy, defendant participated in fraud schemes that intended to victimize at least ten victims and attempted

to obtain at least $154,139.30 from them, with actual losses of $130,724.39.  (PSR ¶¶ 102-103; see also Plea Agreement ¶ 11.)[3]  While some of the victims were elderly or otherwise vulnerable, there is no indication that defendant knew of their particular vulnerabilities.  (Id. ¶¶ 57, 72, 84.)

Notably, defendant participated in the scheme to defraud victim F.K.  (Plea Agreement ¶ 11; PSR ¶¶ 41-46.)  Defendant facilitated the receipt of funds that F.K. was fraudulently induced to send to bank accounts that defendant controlled in Los Angeles.  Additionally, defendant met F.K. at Los Angeles International Airport and drove her to a bank in an attempt to unfreeze funds, when coconspirators fraudulently induced F.K. to travel from Japan to Los Angeles as part of the fraud scheme.  (PSR ¶ 44.)  F.K. suffered significantly as a result of the fraud scheme -- emotionally, psychologically, and financially.  (PSR ¶ 46; Declaration of Anil J. Antony ("Antony Decl."), Exhibit 1 (Victim Impact Statement of F.K.) and 2 (Grand Jury Testimony of F.K.).)  She has lost her life savings, is bankrupt and in significant debt, she has been traumatized by the losses and has considered suicide.  (Id.)

Finally, defendant was involved in criminal conduct predating her involvement in the charged conspiracy and marriage to co-

---

[3] The fraud scheme involving Victim Company 5 resulted in an attempted loss of more than $17 million.  (PSR ¶ 65.)  Because defendant was primarily involved in receive funds for romance scam schemes in which victims made significantly smaller payments -- in the thousands and tens of thousands of dollars, rather than millions of dollars -- the government does not believe that the $17 million intended loss was reasonably foreseeable to defendant.  Accordingly, the government agreed in the plea agreement that "a loss amount between $150,000 and $250,000, corresponding to a +0 offense level increase under U.S.S.G. § 2B1.1(b)(1)(F), is a reasonable and appropriate estimate of defendant's intended loss, and adequately accounts for the seriousness of the offense."  (Plea Agreement ¶ 13.)

defendant Igbokwe. Prior to co-defendant Igbokwe's arrival in the United States in January 2017 and marriage to defendant, defendant was involved in fraud schemes with another uncharged coconspirator, through whom defendant met co-defendant Igbokwe. (Antony Decl. ¶ 1.)

**III. THE PRESENTENCE REPORT**

The PSR recommends application of the following Sentencing Guidelines factors, which are consistent with the Guidelines factors identified in the Plea Agreement:

| | | |
|---|---|---|
| Base Offense Level | 7 | [U.S.S.G. § 2S1.1(a)(1) and § 2B1.1(a)(1)] |
| Intended value of laundered funds more than $150,000 | +10 | [U.S.S.G. § 2S1.1(a)(1) and § 2B1.1(b)(1)(F)] |
| 10 or more victims/substantial financial hardship to 1 or more victims | +2 | [U.S.S.G. § 2S1.1(a)(1) and § 2B1.1(b)(2)(A)] |
| Fraud scheme outside the U.S./sophisticated means | +2 | [U.S.S.G. § 2S1.1(a)(1) and § 2B1.1(b)(10)] |
| Conviction under 18 U.S.C. § 1956 | +2 | [U.S.S.G. § 2S1.1(b)(2)(B)] |
| Sophisticated laundering (including use of fictitious entities) | +2 | [U.S.S.G. § 2S1.1(b)(3)] |
| Acceptance of Responsibility | -3 | [USSG § 3E1.1(a) & (b)] |
| Total Offense Level | 22 | |

(PSR ¶¶ 100-120.)

The government concurs with the USPPO's calculations, which are consistent with the Guidelines factors the parties agreed to in the Plea Agreement. (See Plea Agreement ¶ 13.) The government further agrees with the USPPO's recommendation that the Court impose a

7

sentence of 41 months' imprisonment, three years of supervised release, and a $100 special assessment.

**IV.     THE GOVERNMENT'S SENTENCING RECOMMENDATION**

The government respectfully recommends that the Court impose the following sentence: (a) a sentence of 41 months' imprisonment to be followed by (b) a three-year term of supervised release; and (c) a $100 special assessment.  The sentence that the government recommends is consistent with the plea agreement and sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

The requested sentence strikes an adequate balance between the relevant mitigating and aggravating factors.  Defendant is a refugee who came to the United States at a young age, and she claims to have witnessed atrocities in Sierra Leone's civil war, which still haunt her.  (PSR ¶ 133.)  She also grew up not knowing her father.  (Id.)  Defendant also has three children and is suffering from depression.  These are all mitigating factors.

At the same time, defendant was a good student and enjoyed school, and claims to have held multiple stable jobs.  (Id. ¶¶ 135, 155-165.)  Despite this, defendant participated in the charged conspiracy for more than three years (Plea Agreement ¶ 11), in which defendant participated in defrauding numerous individual victims.  Some of the victims were elderly and one, F.K., suffered substantial financial and emotional hardship.  Defendant received a portion of the proceeds received from the victims for her participation in the schemes.  (Id.)

Contrary to her unverified representation in her sentencing position, defendant has consistently provided such money remittance

8

and laundering services to coconspirators.  For instance, even before the conduct charged here, defendant conspired in other fraud schemes with uncharged coconspirators (Antony Decl. ¶ 1).  She also used the identities of multiple unindicted coconspirators (UICC 1 and 2) to open bank and money service accounts, because banks and money services businesses had blocked her from using their services due to the many fraudulent transactions in which she participated.  (Plea Agreement ¶ 11; Complaint ¶ 55.)  In short, defendant was a well-documented and integral part of multiple fraud schemes that attempted to obtain more than $150,000 from victims, and a participant in prior schemes, as well.

Balancing these factors, the government believes a sentence at the low-point of the Guidelines range -- 41 months' -- is appropriate here.  Such punishment is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

**V.  RESTITUTION**

The government agrees with the victims and restitution amounts identified in the PSR.  (PSR ¶ 183.)

**VI.  FINE**

The government defers to the USPPO's determination of an appropriate fine, including as to defendant's inability to pay a fine.  (Dkt. 853, at 7.)

**VII. CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to a low-end term of 41 months' imprisonment, to be followed by a three-year term of supervised release, and a $100 special assessment.